THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 14-CV-24254-JAL

MARCO J. HERNANDEZ,            )
                               )
    Plaintiff,                 )
                               )
v.                             )
                               )
J.P. MORGAN CHASE BANK, N.A., a)
Delaware corporation and BAYVIEW LOAN )
SERVICING LLC, a Delaware limited )
liability company,             )
                               )
    Defendants.                )
                               )
_____  /

**DEFENDANT JPMORGAN CHASE BANK N.A.'S MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendant JPMorgan Chase Bank, N.A. ("Chase"), pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure, hereby moves for dismissal of the Second Amended Complaint filed by Plaintiff Marco J. Hernandez ("Plaintiff"). In support of this motion, Chase states as follows:

**BACKGROUND**

Plaintiff owns a condominium in the City of Miami, Florida, which he purchased in April 1996 by obtaining a mortgage in the amount of $86,250 ("Mortgage"). 2d Am. Compl. ¶ 6. The Mortgage was originated by International Bankers Financial Group. *Id*. ¶ 7. Plaintiff admits that Chase was the servicer of Plaintiff's Mortgage. *Id*. ¶ 9.

Plaintiff alleges that beginning in 2000, Chase began force-placing flood insurance on the property, and allegedly applying related late charges to his loan account. *Id*. ¶ 13. Plaintiff further alleges, however, that none of these forced-placed insurance transactions were needed

1

because the condominium association allegedly maintained adequate insurance coverage that was sufficient to satisfy Plaintiff's obligations under the Mortgage. *Id.* Plaintiff claims that Chase did not notify Plaintiff of these force-placed insurance transactions until 2011. *Id.* Finally, Plaintiff alleges that the costs of the forced-placed insurance policies were excessive and unreasonable. *Id.* ¶ 14.

Plaintiff also claims that Chase improperly charged the cost of these forced-placed insurance policies to Plaintiff's mortgage account which increased the amount of money demanded for the monthly mortgage payments. *Id.* ¶ 16. Plaintiff further alleges that he continued to pay the scheduled monthly mortgage payments, but refused to pay the additional amounts demanded for the forced-placed insurance policies. *Id.* As a result of this default, Chase commenced foreclosure proceedings. *Id.*

On September 10, 2014, Plaintiff's counsel sent Chase a "Qualified Written Request/Notice of Error/Request for Information," in which Plaintiff's counsel outlined a number of alleged "serious errors" in the servicing of Plaintiff's mortgage loan and requested that Chase respond in writing to address these alleged errors. *Id.* ¶ 18, Ex. A ("Plaintiff's September 10, 2014 Letter"). Chase timely responded to this letter on October 22, 2014, in which Chase explained that it had conducted an investigation into Plaintiff's allegations, but found no errors. *Id.* ¶ 20, Ex. B ("Chase's October 22, 2014 Letter").

Based upon these allegations in Plaintiff's Second Amended Complaint and the documents attached thereto, Plaintiff cannot state a claim against Chase. Indeed, Plaintiff's allegations do not rise to the level of a RESPA violation because both the allegations in Plaintiff's Second Amended Complaint and the exhibits attached to the Second Amended Complaint reflect that Chase complied with its RESPA obligations in this case. Moreover,

Plaintiff has failed to plead that any alleged RESPA violation caused his damages. In addition, Plaintiff's negligence claim fails because Chase does not owe a duty of care to Plaintiff, and Chase's alleged obligations under RESPA are insufficient to create a duty as a matter of law. Finally, Plaintiff's negligence claim, which is based entirely on force-placed insurance policies purchased by Chase and charged to Plaintiff's account, are barred by the applicable statute of limitations to the extent the claim is based upon any policy issued and charged to Plaintiff before November 2010. The Court should therefore grant this motion and dismiss the Second Amended Complaint with prejudice.

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." In deciding a Rule 12(b)(6) motion, "the complaint must plead enough facts to state a claim that is plausible on its face." *Chandler v. Sec. of Fla. Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'shown' - 'that the pleader is entitled to relief.'" *Id.* at 679.

## ARGUMENT

**I. Plaintiff's RESPA Claim Fails Because Chase Properly Complied with its RESPA Obligations, and Plaintiff Failed to Plead that Any Alleged RESPA Violation Caused His Damages.**

RESPA was enacted, in part, to ensure "that consumers throughout the Nation are provided with greater and timelier information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by abusive practices that

3

have developed in some areas of the country." 12 U.S.C. § 2601(a). It provides that borrowers may inquire about federally related mortgages by making a "qualified written request." 12 U.S.C. § 2605(e)(1)(A). The term "qualified written request" is defined in 12 U.S.C. § 2605(e)(1)(B): it is a request that, *inter alia*, (a) describes why a borrower believes her "account is in error," or (b) "provides sufficient detail to the servicer regarding other information sought by the borrower." *Id.* The servicer is required to provide a written acknowledgment of the request within five days, and must respond within thirty days. *Id.* § 2605(e)(2). Additionally, Section 2605(e)(2) requires servicers—"[n]ot later than 30 days . . . after the receipt from any borrower of any qualified written request"—to

> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
>
> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
>
> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
>
> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

*Id.* § 2605(e)(2).

Notably, however, on January 10, 2014, a new regulatory regime went into effect through the Dodd–Frank Wall Street Reform and Consumer Protection Act of 2010. Pub. L. No. 111–203, 124 Stat. 1376 (July 21, 2010) ("Dodd–Frank Act").  Pursuant to the Dodd–Frank Act, new regulations were promulgated entitled the "Mortgage Servicing Rules under the Real Estate Settlement Procedures Act (Regulation X)" and codified at 12 C.F.R. § 1024. According to the Bureau of Consumer Financial Protection ("CFPB"):

> [T]his final rule implements Dodd–Frank Act sections addressing servicers' obligations to correct errors asserted by mortgage loan borrowers; to provide certain information requested by such borrowers; and to provide protections to such borrowers in connection with force-placed insurance. Additionally, this final rule addresses servicers' obligations to establish reasonable policies and procedures to achieve certain delineated objectives; to provide information about mortgage loss mitigation options to delinquent borrowers; to establish policies and procedures for providing delinquent borrowers with continuity of contact with servicer personnel capable of performing certain functions; and to evaluate borrowers' applications for available loss mitigation options. Further, this final rule modifies and streamlines certain existing servicing-related provisions of Regulation X. For instance, this final rule revises provisions relating to mortgage servicers' obligation to provide disclosures to borrowers in connection with a transfer of mortgage servicing, and mortgage servicers' obligation to manage escrow accounts, including restrictions on purchasing force-placed insurance for certain borrowers with escrow accounts and requirements to return amounts in an escrow account to a borrower upon payment in full of a mortgage loan.

78 Fed. Reg. 10, 887 (Feb. 14, 2014).

In addition, the new regulation delineates separate procedures for responding to a borrower's Notice of Error and a borrower's Request for Information.  With respect to a Notice of Error, the regulations impose the following obligations upon a servicer with respect to its response to a Notice of Error:

> (e) Response to notice of error.
>
> (1) Investigation and response requirements.

(i) In general. Except as provided in paragraphs (f) and (g) of this section, a servicer must respond to a notice of error by either:

(A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

(ii) Different or additional error. If during a reasonable investigation of a notice of error, a servicer concludes that errors occurred other than, or in addition to, the error or errors alleged by the borrower, the servicer shall correct all such additional errors and provide the borrower with a written notification that describes the errors the servicer identified, the action taken to correct the errors, the effective date of the correction, and contact information, including a telephone number, for further assistance

(f) Alternative compliance.

(1) Early correction. A servicer is not required to comply with paragraphs (d) and (e) of this section if the servicer corrects the error or errors asserted by the borrower and notifies the borrower of that correction in writing within five days (excluding legal public holidays, Saturdays, and Sundays) of receiving the notice of error

(2) Error asserted before foreclosure sale. A servicer is not required to comply with the requirements of paragraphs (d) and (e) of this section for errors asserted under paragraphs (b)(9) or (10) of this section if the servicer receives the applicable notice of an error seven or fewer days before a foreclosure sale. For any such notice of error, a servicer shall make a good faith attempt to respond to the borrower, orally or in writing, and either correct the error or state the reason the servicer has determined that no error has occurred.

12 C.F.R. § 1024.35(e), (f).

In the present case, Plaintiff's RESPA claim is based on the September 10, 2014 Letter, and Chase's response thereto. Plaintiff claims that Chase's response to the September 10, 2014

Letter was noncompliant with Chase's obligations under Regulation X because Chase failed to correct the errors outlined in the letter.  Plaintiff is mistaken, because as shown by the allegations in Plaintiff's Second Amended Complaint and the documents attached thereto, Chase has complied with its RESPA obligation as modified by Regulation X.

Indeed, there is no dispute that Chase complied with its RESPA obligations by providing a written response.  More importantly, the documents Plaintiff attached to his Second Amended Complaint show that Chase complied with its RESPA obligations by conducting a reasonable investigation and concluding that no error had occurred.  *See* 2d Am. Compl., Ex. B. ("We have completed our review and confirmed that there has not been an error with the loan . . . .").  Chase then continued by providing a detailed explanation about the history of the lender based flood policies that had been placed on the property, why such insurance was placed, and the then current status of Plaintiff's escrow account.  *Id.*  Chase also explained what Plaintiff would need to do to obtain refunds for prior lender placed policies if Plaintiff could show that adequate flood insurance had been in place during that tine period.  *Id.*  Indeed, Chase's response addressed each and every issue Plaintiff raised in his September 10, 2014 Letter.  Therefore, the allegations in Plaintiff's Second Amended Complaint are insufficient to state a RESPA claim.[1]

More importantly, Plaintiff has failed to allege sufficient facts to show that he suffered actual or statutory damages, which is another necessary element of a RESPA claim.  *See Frazile*

---

[1] The only new "facts" Plaintiff asserted in the Second Amended Complaint concern the reasonableness of Chase's investigation.  2d Am. Compl. ¶¶ 27-29.  Plaintiff claims that Chase's investigation was unreasonable because it shifted the investigatory responsibility to Plaintiff insisting that he must prove a negative and demonstrate that there was never a lapse of insurance. *Id.* ¶ 27.   Again, Plaintiff's own allegations admit that Chase conducted an investigation in responses to Plaintiff's September 10, 2014 Letter.  More importantly, there is no legal authority for its proposition that the new Regulation X requirements somehow modify Plaintiff's obligations under the mortgage and note to maintain adequate insurance and provide yearly proof that such insurance had not lapsed.

*v. EMC Mortg. Corp.*, 382 F. App'x 833, 836 (11th Cir.2010) (per curiam) (An allegation of damages is a necessary element of a claim under 12 U.S.C. § 2605.); *Williams v. America's Servicing Co.*, No. 2:09–cv–755–FtM–29DNF, 2011 WL 1060652, at *2 (M.D.Fla. Mar. 22, 2011) (setting forth elements of a 12 U.S.C. § 2605 claim). To satisfy this element, a plaintiff must allege facts "establishing a causal link between the financing institution's violations and [her] injuries . . ." *McClean v. GMAC Mortg. Corp.*, 398 F. App'x 467, 471 (11th Cir. 2010) (internal citations omitted); *see also Bonadio v. PHH Mortg. Corp.*, No. 12 CV 3421(VB), 2014 WL 522784, at *6 (S.D.N.Y. Jan. 31, 2014). Plaintiff's bare assertion of unspecified damages is insufficient to state a claim under RESPA. *See id.*; *Fournier v. Bank of Am. Corp.*, No. 5:13-CV-00702, 2014 WL 421295, at *4 (N.D.N.Y. Feb. 4, 2014) (dismissing RESPA claim where "Plaintiff fails to state how the Defendants' alleged violations of RESPA are the proximate cause of her injuries" and the damages were alleged "in wholly conclusory terms"); *Roth v. CitiMortgage Inc.*, No. 12-CV-2446 (SJF)(WDW), 2013 WL 5205775, at *7-8 (E.D.N.Y. Sept. 11, 2013), *aff'd, Roth v. CitiMortgage Inc.*, F.3d , 2014 WL 2853549 (2d Cir. June 24, 2014); *Corazzini v. Litton Loan Servicing LLP*, No. 09-CV-199 (MAD)(ATB), 2010 WL 6787231, at *12 (N.D.N.Y. June 15, 2010) ("[T]he courts have consistently dismissed complaints under RESPA if they do not allege actual damages or state merely that in a conclusory fashion the defendant caused damages to the plaintiff."). Indeed, nowhere in Plaintiff's Second Amended Complaint does he try to link the alleged RESPA violations to any damages he has suffered. Accordingly, Plaintiff's RESPA cause of action fails.

## II.   Plaintiff's Negligence Claim Fails Because Chase Does Not Owe Plaintiff a Duty of Care.

To prevail on a negligence claim under Florida law, a plaintiff must prove (1) a legal duty owed by defendant to the plaintiff, (2) breach of that duty, (3) injury to plaintiff proximately

8

caused by the breach, and (4) resulting damages. *See, e.g.*, *Paterson v. Deeb*, 472 So.2d 1210, 1214 (Fla. 1st DCA 1985). "It is axiomatic that a complaint must allege ultimate facts establishing each and every essential element of a cause of action in order to entitle the pleader to the relief sought." *Sanderson v. Eckerd Corp.*, 780 So.2d 930, 933 (Fla. 5th DCA 2001). Whether a duty of care exists is a question for the court. *See, e.g.*, *Nat'l Title Ins. Co. v. Lakeshore 1 Condominium Ass'n, Inc.*, 691 So.2d 1104, 1106–07 (Fla. 3d DCA 1997) (noting "duty element is the 'minimum threshold *legal* requirement' for asserting a cause of action in negligence" and its existence is question of law, not factual issue for the jury (emphasis in original) (internal citations omitted)).

Here, Chase does not owe a duty of care to Plaintiff because the statutory obligations imposed under RESPA do not give rise to such a duty. S*ee* 2d Am. Compl. ¶ 41. Indeed, numerous federal courts have found that "TILA and RESPA, in and of themselves, do not establish a cognizable duty owed by a lender to borrower" sufficient to support a common law negligence cause of action.[2] *See Henning v. Wachovia Mortg., FSB*, 969 F. Supp. 2d 135, 152 (D. Mass. 2013); *see also Broderick v. PNC Mortg. Corp.*, No. 11–10047–JLT, 2013 WL 1187111, at *3 n.63 (D. Mass. Mar. 20, 2013); *Thornes v. IMB Lender Bus. Process Servs., Inc.*, No. C10–1716MJP, 2011 WL 677428, at *3 (W.D. Wash. Feb. 15, 2011); *Levy v. JP Morgan*

---

[2] Moreover, a mortgagor and mortgagee ordinarily deal at arms-length in a debtor-creditor relationship, which further supports a finding that a duty of care does not exist for purposes of Plaintiff's negligence claim. *See Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 541 (Fla. 5th DCA 2003) ("[I]n the usual creditor-debtor relationship, a fiduciary duty does not arise and allegations of superior knowledge of a party's financial condition are generally insufficient to transform the creditor-debtor relationship into a fiduciary relationship."); *see also Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. 3d DCA 1994) ("Generally, the relationship between a bank and its borrower is that of a creditor to debtor, in which the parties engage in arms-length transactions, and the bank owes no fiduciary responsibilities."); *see also Silver v. Countrywide Home Loans, Inc.*, 760 F. Supp. 2d 1330, 1338 (S.D. Fla 2011) ("The general rule is that the relationship between a bank and its borrower is that of a creditor-debtor and that a bank owes the borrower no fiduciary duty.").

*Chase*, No. 10CV1493 DMS (BLM), 2010 WL 4641033, at *2 (S.D. Cal. Nov. 5, 2010); *Yanik v. Countrywide Home Loans, Inc.*, No. CV 10–6268 CAS (RZx), 2010 WL 4256312, at *6 (C.D. Cal. Oct. 18, 2010).  Accordingly, the negligence claim against Chase should be dismissed with prejudice.

      **III.**    **Plaintiff's Negligence Cause Of Action Based On Any Force-Placed Policies Charged to Plaintiff Before November 2010 Are Barred the Applicable Statute of Limitations.**

Under the statute of limitations, a negligence action must be commenced within four years of when the cause of action accrued. § 95.11(3)(a), Fla. Stat. (2009). "A cause of action accrues when the last element constituting the cause of action occurs." § 95.031(1), Fla. Stat. (2009).  The last element of a cause of action based on negligence is actual loss or damage. *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003).  Here, Plaintiff plainly alleges that "[b]eginning in 2000, Chase began force-placing flood insurance on Plaintiff's property, and applying the related charges to his mortgage account."  2d Am. Compl., ¶ 13.  Thus, accepting these allegations as true, Plaintiff was damaged or suffered actual loss "[b]eginning in 2000" when Chase allegedly started placing flood insurance on the property, and applying the related charges to Plaintiff's account.  Because Plaintiff did not file this claim until November 2014, Plaintiff cannot recover for any force-placed insurance charged to Plaintiff's more than four (4) years before the filing of the initial Complaint as those claims would be barred by the statute of limitations.  Therefore, to the extent this Court permits Plaintiff's negligence claim to go forward (which it should not), the Court should bar Plaintiff from recovery based on alleged force-placed insurance policies before November 2010.

## CONCLUSION

For the foregoing reasons, Chase respectfully requests that the Court enter an Order dismissing the Second Amended Complaint and granting any further such relief that the Court deems just and proper.

Respectfully submitted,

　　/s/ Matthew J. McGuane　　
MATTHEW J. McGUANE
Florida Bar No. 84473
**WARGO & FRENCH, LLP**
201 S. Biscayne Boulevard, Suite 1000
Miami, Florida 33131
Telephone: (305) 777-6050
Facsimile: (305) 777-6001
E-mail: mmcguane@wargofrench.com
E-service: flservice1@wargofrench.com
*Counsel for Defendant JPMorgan Chase Bank, N.A.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 9, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all parties and counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

　　/s/ Matthew J. McGuane　　
MATTHEW J. McGUANE