**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO. 14-24254-CIV-GOODMAN**

**[CONSENT CASE]**

MARCO J. HERNANDEZ,

      Plaintiff,

v.

J.P. MORGAN CHASE BANK N.A.,

      Defendant.

_____/

<u>**ORDER ON DEFENDANT'S MOTION TO DISMISS**</u>

This dispute arises from two letters exchanged between a mortgagor and a mortgagee concerning the mortgagee's forced placement of flood/hazard insurance on the mortgagor's property, a condominium apartment. However, unlike much of the recent litigation concerning the so-called "force-placed insurance" (sometimes called "lender-placed insurance"), this lawsuit does not turn so much on the efficacy of the force-placed insurance (at least with regard to the issue of liability). Instead, the mortgagee's compliance (or noncompliance) with the statutory scheme governing the error resolution process and communications between lenders and consumers are at the core of Plaintiff's claim.

Plaintiff filed this action against J.P. Morgan Chase Bank N.A. ("Chase")[1] for (1) violating the error resolution procedures established by the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e),[2] and for (2) negligence. [ECF No. 32]. Plaintiff attached the two relevant communications -- Plaintiff's September 10, 2014 "Qualified Written Request/Notice of Error/Request for Information" ("NOE") to Chase [ECF No. 32-1] and Chase's October 22, 2014 letter in response (the "Response") to Plaintiff [ECF No. 32-2] -- to the Second Amended Complaint [ECF No. 32].

Chase moves to dismiss Plaintiff's Second Amended Complaint on three grounds: (1) Chase fully complied with its RESPA obligations and Plaintiff failed to adequately plead that any alleged damages were **caused** by an alleged RESPA violation; (2) Plaintiff's negligence claim fails because Chase does not owe Plaintiff a duty of care; and (3) Plaintiff's negligence cause of action based on any force-placed insurance policies charged to Plaintiff before November of 2010 are barred by the statute of limitations. Plaintiff filed a response [ECF No. 50], Chase filed a reply [ECF No. 53], and

---

[1]     Plaintiff's complaint [ECF No. 1], first amended complaint [ECF No. 13] and second amended complaint [ECF No. 32] also name Bayview Loan Servicing LLC ("Bayview") and Manufacturers and Traders Trust Company ("MT&T") as co-defendants. However, the claims against those two defendants were settled and dismissed. [ECF Nos. 67; 68].

[2]     This statutory requirement is supplemented by "Regulation X," 12 C.F.R. § 1024.35(e), which is discussed in more detail below.

Plaintiff filed a Court-authorized surreply [ECF No. 56]. The matter is now ripe for ruling.

For the reasons outlined below, the Undersigned **grants** Chase's motion, albeit without prejudice. Plaintiff may file a Third Amended Complaint within ten (10) calendar days of this Order.

[The Court recognizes that Chase very recently [ECF No. 73] filed a summary judgment motion. Plaintiff's deadline to file a response has not yet expired, and he has not yet submitted a response. In its summary judgment motion, Chase raises the same arguments it asserted in its dismissal motion. The most-recent motion, of course, is based on the development of the factual record through actual evidence, as opposed to the dismissal motion, which concerns the sufficiency of the pleadings. Because Plaintiff has not yet responded to the summary judgment motion, the Undersigned does not know if Plaintiff has the ability to allege additional facts should he decide to file another version of his complaint].

I.      **FACTUAL BACKGROUND**

Plaintiff owns a condominium in the City of Miami, Florida, which he purchased in April 1996 by obtaining a mortgage in the amount of $86,250 ("Mortgage"). [ECF No. 32, p. 3]. The Mortgage was originated by International Bankers Financial Group. [*Id.*]. Chase serviced Plaintiff's Mortgage. [*Id.*].

Plaintiff alleges that, beginning in 2000, Chase began force-placing flood insurance on the property and applying related late charges to his loan account. [*Id.*, at pp. 5-6]. Plaintiff further alleges, however, that none of these forced-placed insurance transactions were needed because the condominium association maintained adequate insurance coverage that was sufficient to satisfy Plaintiff's obligations under the Mortgage. [*Id.*]. Plaintiff claims that Chase did not notify Plaintiff of these force-placed insurance transactions until 2011. [*Id.*] Finally, Plaintiff alleges that the costs of the forced-placed insurance policies were excessive and unreasonable. [*Id.*, at p. 6].

Plaintiff also claims that Chase improperly charged the cost of these force-placed insurance policies to Plaintiff's mortgage account, which increased the amount of money demanded for the monthly mortgage payments. [*Id.*, at pp. 6-7]. Plaintiff further alleges that he continued to pay the scheduled monthly mortgage payments but refused to pay the additional amounts demanded for the forced-placed insurance policies. [*Id.*]. As a result of this default, Chase commenced foreclosure proceedings. [*Id.*].

On September 10, 2014, Plaintiff's counsel sent Chase the NOE, in which he outlined a number of alleged "serious errors" in the servicing of Plaintiff's mortgage loan and requested that Chase respond in writing to address these alleged errors. [ECF Nos. 32, p. 7; 32-1 (Plaintiff's September 10, 2014 NOE)]. Chase responded to this letter

on October 22, 2014[3] and explained that it had "completed our review" of Plaintiff's allegations but "confirmed" that there were no errors with the loan. [ECF Nos. 32, p. 8; 32-2 (Chase's October 22, 2014 Response)]. Plaintiff alleges that Chase's response is statutorily insufficient [ECF NO. 32, pp. 9-13] and also constitutes common law negligence [*Id.*, at pp. 13-14]. Chase responds that Plaintiff's allegations do not rise to the level of a RESPA violation because both the allegations of the Complaint and the exhibits attached to the Complaint reflect that Chase complied with its RESPA obligations -- i.e., it conducted a reasonable investigation and provided the borrower with the required responsive information.

## II.    LEGAL STANDARD FOR MOTION TO DISMISS

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must take all well-pleaded facts in the plaintiff's complaint and all reasonable inferences drawn from those facts as true. *Jackson v. Okaloosa Cnty., Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994). "A pleading must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). While detailed factual allegations are not always necessary in order to prevent dismissal of a complaint, the allegations must "'give the

---

[3]      As outlined later in this Order, the applicable federal regulation requires the servicer (e.g., Chase) to respond within thirty (30) days of receiving the letter.  Chase's October 22, 2014 letter is dated 42 days from counsel's September 10, 2014 letter. The Second Amended Complaint does not allege when the letter was received, and Plaintiff has not argued that the response was untimely.

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555. *See also Iqbal*, 556 U.S. at 678 (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient **factual** matter, accepted as true, to 'state a claim to relief that is **plausible on its face**.'" *Iqbal*, 556 U.S. at 678. (quoting *Twombly*, 550 U.S. at 570) (emphasis added); *see also Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288–90 (11th Cir. 2010). "[C]onclusory allegations, unwarranted deductions of fact, or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Moreover, when the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—

but it has not show[n]—that the pleader is entitled to relief." *Id.* (internal quotations omitted).

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993).

While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. "Dismissal pursuant to Rule 12(b)(6) is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (quoting *Conley*, 355 U.S. at 45–46). Although, as noted, a court must accept as true a plaintiff's allegations, a court may dismiss a complaint on a dispositive issue of law. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

III.    **LEGAL ANALYSIS**

    A.    <u>**Count I: Alleged Violation of RESPA**</u>

        *1.    RESPA Legal Standard*

RESPA was enacted, in part, to ensure "that consumers throughout the Nation are provided with greater and timelier information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a). It provides that borrowers may inquire about federally related mortgages by making a "qualified written request." 12 U.S.C. § 2605(e)(1)(A).

The term "qualified written request" is defined in 12 U.S.C. § 2605(e)(1)(B): it is a request that, *inter alia*, (a) describes why a borrower believes her "account is in error," or (b) "provides sufficient detail to the servicer regarding other information sought by the borrower." *Id.* The servicer is required to provide a written acknowledgment of the request within five days, and must respond within thirty days. *Id*. § 2605(e)(2). Additionally, Section 2605(e)(2) requires servicers -- "[n]ot later than 30 days . . . after the receipt from any borrower of any qualified written request" -- to:

> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

*Id.* § 2605(e)(2).

However, on January 10, 2014, a new regulatory regime went into effect through the Dodd–Frank Wall Street Reform and Consumer Protection Act of 2010. Pub. L. No. 111–203, 124 Stat. 1376 (July 21, 2010) ("Dodd–Frank Act"). Pursuant to the Dodd–Frank Act, new regulations were promulgated: the "Mortgage Servicing Rules under the Real Estate Settlement Procedures Act (Regulation X)," codified at 12 C.F.R. § 1024. Notably, the new regulation delineates separate procedures for responding to a borrower's Notice of Error and a borrower's Request for Information. With respect to a Notice of Error, the regulations impose the following obligations upon a servicer with respect to its response to a Notice of Error:

(e) Response to notice of error.

(1) Investigation and response requirements.

(i) In general[,] . . . a servicer must respond to a notice of error by either:

9

(A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; **or**

(B) Conducting a reasonable investigation **and** providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e) (emphasis added).

Therefore, if a servicer selects option (B), then it has two obligations:   (1) conducting a reasonable investigation, and (2) providing a written response containing certain types of information and disclosures.

## 2.    *Application to Plaintiff's Complaint*

Plaintiff's NOE specifically claimed:

Beginning in 2011, or perhaps even earlier than that, Chase began force-placing flood insurance on [Plaintiff's] property. The force-placement was in error, because as mentioned above, [Plaintiff's] condominium association always maintained appropriate flood insurance coverage. A true and correct copy of the Association's flood insurance declarations page is attached hereto[.] . . . At some point, Chase . . . recognized that the Association maintained flood coverage, and purported to cancel at least some of the force-placed coverage. Correspondence from Chase documenting this cancellation is attached hereto[.]

[ECF No. 32-1, p. 2].

The NOE then notes that foreclosure proceedings have recently been commenced against Plaintiff, because, at least in part, Plaintiff purportedly missed several monthly

payments due to an increase in his premiums that resulted from the force-placed insurance policies. [*Id.*]. Plaintiff reiterated that his condominium association always maintained the required level of flood insurance, so no force-placed insurance charges should have ever been applied to the account. [*Id.*]. Plaintiff then invokes RESPA and Regulation X to implore Chase to investigate and correct the errors. Additionally, Plaintiff requested specific information and documentation concerning his escrow and force-placed insurance policies. [*Id.*, at p. 3].

The documents attached to the NOE are (1) a letter purportedly from Chase stating that force-placed insurance coverage has been cancelled effective December 1, 2013 because Plaintiff allegedly provided proof of flood insurance coverage [*Id.*, at p. 5], and (2) a flood insurance policy declaration from Hartford Insurance Company indicating that a policy was in place for Plaintiff's building from March 2, 2011 to March 2, 2012 [*Id.*, at pp. 7-8].

It is uncontested that Plaintiff submitted a "qualified written request" triggering the RESPA provisions requiring Chase to formally respond. Chase chose to respond pursuant to 12 C.F.R. § 1024.35(e)(1)(i)**(B)**, which applies when a servicer determines that there has been no error with the account. Chase's letter states in relevant part:

> We've completed our review and confirmed that there hasn't been any error with the loan because:
>
> We have not received all required proof of hazard and flood insurance coverage for this loan between the timeframe of November 29, 2000, to

March 2, 2011. Lender placed policies were charged to the loan each year between this timeframe.

The Lender placed policy effective December 2, 2010, to December 2, 2011, was cancelled, effective March 2, 2011, due to proof of coverage being received. The proof of insurance coverage with Hartford Insurance Company shows a policy period from March 2, 2011, to March 2, 2012. A partial refund of $5,823.08 has been posted to the loan.

For your convenience, we have attached copies of the [requested documents].

To have cancellations and refunds processed for all prior lender placed policies, proof of insurance coverage is needed to show that the property was covered from November 29, 2000, to March 2, 2011.

[ECF No. 32-2, p. 1].

No party contests the authenticity of any of these documents, and, as the Undersigned noted above, when considering a motion to dismiss, the court may consider exhibits attached to the pleadings. *See Grossman*, 225 F.3d at 1231.

Having reviewed the pleadings, the attached exhibits and the applicable law, the Undersigned finds that Plaintiff **does not state a claim** for which relief can be granted.

Without further factual evidence, the Complaint and the exhibits demonstrate that Chase complied fully with both the requirements of RESPA and Regulation X. While Plaintiff *claims* that Chase performed no investigation at all (or at least an inadequate or unreasonable investigation), Plaintiff has submitted only threadbare, fact-free, conclusory accusations on this point. Plaintiff alleges no specific facts to support this allegation of a purported failure to reasonably investigate. Even taking all well-

pleaded facts in the complaint and all reasonable inferences drawn therefrom as true, *see Jackson*, 21 F.3d at 1534, it seems at this point "that [Plaintiff] can prove no set of facts in support of his claim which would entitle him to relief[,]" *Magluta*, 375 F.3d at 1273 (internal quotation omitted).

It is evident on the face of Chase's Response to the NOE -- attached as an exhibit to the Amended Complaint [ECF No. 32-2] -- that it did in fact perform an investigation because the letter contains specific information relevant to Plaintiff's loan and insurance policies. Plaintiff's allegation concerning Chase's insufficient investigation -- or "that Chase did not conduct *any* investigation," as phrased in Plaintiff's surreply [ECF No. 56, p. 2] (emphasis in original) -- is a textbook example of a "legal conclusion[] masquerading as fact[.]" *Oxford Asset Mgmt., Ltd.*, 297 F.3d at 1188.

"[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007). As the Undersigned quoted above, the Response to the NOE notes what information Chase does and does not have concerning flood insurance policies. For example, Chase *does* have proof of the Hartford Insurance Company policy from March of 2011 to March of 2012 but does not have proof of flood insurance from November of 2000 through March of 2011. [ECF No. 32-2, p. 1]. This information directly answers Plaintiff's NOE *and* directly contradicts Plaintiff's allegations in the Amended

13

Complaint that Chase performed an inadequate investigation (or no investigation at all).

In addition, Chase's response implicitly *encourages* Plaintiff to submit proof of insurance coverage for the November 2000 to March 2011 period and notes that such proof would result in "cancellations and refunds." This is hardly the hallmark of an unreasonable investigation or an inadequate response.

Significantly, Plaintiff does not allege that Chase was in possession of proof of the condominium association's flood insurance policy from November 2000 through March 2011. Plaintiff does not allege any means by which Chase *could* have obtained that information on its own, nor does Plaintiff allege that Chase failed to undertake this investigation in accordance with any specific requirements. Rather, Plaintiff's threadbare allegation is that Chase failed to undertake a reasonable investigation because a condominium association insurance policy allegedly existed (though Plaintiff provided proof that such policy existed for only *one year out of a twelve-year period*) and Chase did not have record of that policy.

Chase's Response to Plaintiff's NOE provided a straightforward answer that it did not believe any error occurred because a review of the record showed no proof of insurance coverage on the subject property from November of 2000 through March of 2011. [ECF No. 32-2, p. 1]. Chase further provided Plaintiff with specific information as to what is required to receive refunds for any force-placed charges that may have

improperly been assessed: "To have cancellations and refunds processed for all prior lender placed policies, proof of insurance coverage is needed to show that the property was covered from November 29, 2000, to March 2, 2011." [*Id.*].

Plaintiff offers only the conclusory allegation that Chase "did not conduct a reasonable investigation[,]" and that "[r]ather than explaining why it believed there ever was a lapse in the condominium association's coverage, Chase attempt[ed] to shift is [sic] investigatory responsibility to Plaintiff insisting that he must prove the negative and demonstrate that there never was any lapse." [ECF No. 32, p. 9].

Chase's investigation (i.e., its review) revealed to Plaintiff the exact time period for which Chase was not in possession of any proof of adequate flood insurance (and thus why it was necessary for Chase to force-place coverage). [ECF No. 32-2, p. 1]. Plaintiff's assertion that this statement somehow shifted the RESPA burden from Chase onto Plaintiff is unpersuasive.

The Undersigned views Plaintiff's allegations in his Second Amended Complaint as a scenario where "the exhibits contradict the general and conclusory allegations of the pleading[.]" *Griffin Indus., Inc.*, 496 F.3d at 1206.

The Undersigned concludes that the exhibit in this case [ECF No. 32-2] are self-evident of an investigation, thereby contradicting Plaintiff's allegations for the reasons elaborated (at length) above. Beyond merely *saying*, in a wholly conclusory way, that

15

Chase did not undertake a reasonable investigation, Plaintiff presents no *factual* allegations to make his conclusion plausible in the face of the uncontested exhibit.

Plaintiff relies heavily on *Marais v. Chase Home Financing, LLC*, 24 F. Supp. 3d 712 (S.D. Ohio 2014), in his response to the dismissal motion and in the Second Amended Complaint. Plaintiff analogizes *Marais*, where the district court found the servicer's response to a Notice of Error deficient in numerous respects, to the current situation. However, the response in *Marais* is factually distinct from Chase's response here.

Marais' information requests were generated because of her belief that her payments had been misapplied, fees wrongfully assessed, and payments counted late when they had been timely. *Id.* at 725. "Under the circumstances, RESPA required a response that dealt with this prime concern by correcting the account, investigating and explaining why the account was correct, or investigating and explaining the issue by providing information about it." *Id.* at 725-26. The district court noted that "[w]hile this Court does not suggest that a servicer must, in order to avoid liability under RESPA, respond in detail to every aspect of every [notice of error] tendered by a borrower, the servicer must, whatever response it chooses to make, fairly meet the substance of the [notice of error]." *Id.* at 725. The court was not satisfied with the servicer's response, which, according to the court, was to "merely [spit]-out a form response enclosing copies of Marais' account documents." *Id.* at 726. "No one at [the servicer] investigated

Marais' claims, attempted to understand the problems, or offered Marais the correction or 'explanation or clarification' to which she was, by law, entitled." *Id.*

Having reviewed Chase's Response to the NOE, the Undersigned does not reach the same conclusions as the district court did in *Marais*. Specifically, Chase's Response does, to quote *Marais*, "fairly meet the substance of the" NOE. Plaintiff's NOE states that the force-placement of insurance "[b]eginning in 2011, or perhaps earlier than that," was in error because the condominium association always maintained appropriate flood insurance coverage. [ECF No. 32-1, p. 2]. Thus, Plaintiff requested that Chase investigate and correct *this* supposed error.

Chase's response directly meets the substance of Plaintiff's request. Chase informed Plaintiff of the exact time period for which insurance coverage was placed on the property and why is it was done (i.e., because Chase did "not receive all required proof of hazard and flood insurance coverage for this loan [in this] timeframe"). [ECF No. 32-2, p. 1]. Plaintiff's letter mentioned force-placed insurance beginning in 2011, and, although it suggested lender-placed coverage may have been earlier than that, it did not provide any further specifics. But Chase's response pinpoints the additional years during which force-placed coverage was applied. This alone is further proof that Chase conducted an investigation meeting the substance of the error flagged in the plaintiff's NOE. How else would Chase know the specific years of the additional coverage unless it conducted some type of inquiry?

17

Furthermore, Chase accepted the insurance declaration for March 2, 2011 through March 2, 2012 submitted by Plaintiff and remitted a partial refund for coverage placed in that time period. [*Id.*]. Accordingly, unlike in *Marais*, Chase met the substance of every single request of Plaintiff, doing significantly more than "merely [spitting]-out a form response[.]"

Other cases that Plaintiff cites to actually *support* the Undersigned's assessment of Chase's letter  and can also be distinguished  from the present circumstances (for the purpose of addressing the points on which Plaintiff seeks to draw from those cases).

In *Friedman v. Maspeth Fed. Loan & Savings Assoc.*, 30 F. Supp. 3d 183 (E.D.N.Y. 2014), the district court found that a plaintiff presented a plausible claim under RESPA despite the lender's claim to have complied with the letter of the law by conducting an investigation and presenting the requested information (finding that there was no error). The *Friedman* court found -- at the motion to dismiss stage -- that, because the plaintiff presented *evidence* plausibly demonstrating that the defendant gave incorrect information, the complaint stated a valid claim. *Id.* at 194.

The *Friedman* scenario, however, is inapposite because Plaintiff's allegations are not based upon Chase providing demonstrably (or even allegedly) false information in the Response to the NOE. The *Friedman* ruling turned on the allegation that the lender's response to the notice of error included *false* information (namely, it claimed that the plaintiff's payments were received late, while the plaintiff alleged that certain mail

18

receipts showed that the payments were, in fact, timely). *Id.* This allegation of falsity in the response raised an issue of whether the lender had actually complied with RESPA.

In the present matter, there is no allegation that *anything* Chase stated in the Response is incorrect. As the Undersigned noted above while discussing *Marais*, Chase directly addressed Plaintiff's NOE substantively and succinctly. Chase's Response informs Plaintiff of the exact time period for which insurance coverage was force-placed on the property and why is it was done, and then directs Plaintiff to the steps that need to be procedurally undertaken to remedy any further error (if there is any). [ECF No. 32-2, p. 1]. Thus, based on the documents attached to the Second Amended Complaint and the lack of specific factual allegations to support a wholly conclusory theory, Chase undertook a reasonable investigation and addressed Plaintiff's concerns.

Another case cited by Plaintiff, *Wilson v. Bank of America, N.A.*, 48 F. Supp. 3d 787 (E.D. Pa. 2014), is equally inapplicable. In *Wilson*, the servicer provided responses that (1) failed to state whether an error had occurred and that the borrower was entitled to request copies of all documents; (2) only partially responded to the inquiries; (3) contained material errors about the borrower's account; and (4) contained contradictory information. *Id.* at 793-94. Given these allegations of significant deficiencies in the servicer's response, the *Wilson* court found that the plaintiff plausibly stated a RESPA violation claim. *Id.* at 805. The district court found the varying and contradictory

statements by the lender particularly supportive of the allegation that a "reasonable investigation"[4] did not actually occur. *Id.*

These distinct circumstances do not exist here. Specifically, Plaintiff does not allege that Chase provided contradictory information (just as Plaintiff did not allege that Chase provided false information, such as was found in *Friedman*). Plaintiff's Second Amended Complaint *concludes* that Chase's investigation was deficient, but does not base that conclusion on any *factual* allegation as required by Rule 12(b)(6). The consumers in *Wilson* and *Friedman* very specifically alleged deficiencies in the investigatory aspect of RESPA (and Regulation X) by pointing to *facts* -- i.e., the servicer in *Friedman* allegedly provided the borrower with false information and the servicer in *Wilson* allegedly provided contradictory information (as well as failed to provide requested documents and state whether or not there was an error).

---

[4]     To be sure, *Wilson* court did also state that "[T]he Court, however, cannot determine, based solely on the attached letters and in the absence of discovery, whether Defendant's investigation was 'reasonable' for purposes of RESPA." The Undersigned does not find this statement determinative. The Undersigned has concluded that the exhibits presented with the complaint **contradict** Plaintiff's allegations of wrongdoing by unequivocally demonstrating Chase's compliance with the statutory and regulatory scheme. Additional facts concerning a purported failure to conduct a reasonable investigation might lead to a different conclusion, but the Second Amended Complaint does not provide the additional evidence which could theoretically result in a different conclusion. Moreover, this Order is not a final finding that the investigation was in fact reasonable; it is simply a ruling that the Second Amended Complaint does not state a claim for a failure to reasonably investigate and that this pleading deficiency results in a failure to state a claim.

Plaintiff alleges deficiency in Chase's investigation because certain information -- that Chase is not even alleged to have in its possession -- proved that there was in fact insurance coverage on Plaintiff's property over a certain period of time. However, Chase's Response to the NOE directly addressed Plaintiff's concern, stating that cancellations and refunds for all prior force-placed insurance policies require proof of insurance coverage, which Chase did not have. [ECF No. 32-2, p. 1]. Chase did not respond that there was not necessarily coverage on the property from November of 2000 through March of 2011, but rather states that it possesses no proof of such coverage. [*Id.*]. Plaintiff does not allege any falsity in this statement, and it is clear, on the face of this exhibit, that Chase met its obligations to the letter of the law under RESPA and Regulation X.

Therefore, the Undersigned **grants** Chase's motion to dismiss Count I **without prejudice**.

Plaintiff has already filed three versions of his claim, and the Court will give him one final opportunity to state a claim in a Third Amended Complaint, should he decide to file one after he and his lawyer review their obligations under Federal Rule of Civil Procedure 11. The Court notes that Chase has filed a summary judgment motion and Plaintiff has had time to obtain discovery since this lawsuit was filed last year. That discovery might have revealed actual evidence to support the now-only-conclusory

claim that Chase's investigation was unreasonable, or it might have uncovered evidence demonstrating that the investigation was in fact reasonable.

Because this ruling addresses only the facial sufficiency of the Second Amended Complaint (and the exhibits), the Court is not substantively considering Chase's summary judgment motion. Moreover, the Court notes that Plaintiff has not yet responded to that motion and the Undersigned therefore does not know whether Plaintiff will challenge any of the facts which Chase says are undisputed and brand them as disputed. However, Chase's summary judgment motion and its related statement of undisputed material facts [ECF Nos. 73; 74] contend that Chase arranged for its escrow department to determine if Chase had any evidence of flood insurance **and** also reached out to Assurant, the company responsible for tracking insurance policies and handling the insurance claim process and customer service inquiries about insurance.

If these steps were in fact taken (i.e, Plaintiff has no competent evidence to question the veracity of Chase's representations), then it is difficult to imagine any additional step which Chase could have taken to further investigate the NOE from Plaintiff's counsel. Phrased differently, it would be hard to conjure up a reliable factual basis to support the notion that Chase's investigation was unreasonable. The Court is confident that Plaintiff and his counsel will consider these points when deciding whether to file yet another version of the lawsuit.

B.        **Count II: Negligence**

Plaintiff's second count against Chase is a negligence per se claim, alleging that Chase's violation of RESPA and Regulation X also constitutes a breach of the duty imposed by the statutory scheme. Accordingly, Count II is predicated upon a finding that Chase is liable under Count I.

"A negligence per se claim [is] appropriate under Florida law when there is a violation of a 'statute which establishes a duty to take precautions to protect a particular class of persons from a particular injury or type of injury.'" *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 353 (11th Cir. 2012) (internal quotations omitted). To quote the district court in *Nunez v. J.P. Morgan Chase Bank, N.A.*, No. 6:14-cv-1485, 2015 WL 1638242 (M.D. Fla. Apr. 13, 2015), where the plaintiff made the same claim, "because negligence per se is predicated on the violation of a statute or regulation, where there is no violation a negligence per se claim cannot stand." 2015 WL 1638242, at *5.[5]

Therefore, the Undersigned **grants** Chase's motion to dismiss Count II **without prejudice**.

---

[5]        Given this ruling, there is no need to address Chase's other legal arguments -- that Chase does not owe Plaintiff a duty of care and, even if it did, the statute of limitations would bar any negligence claim based on premiums charged for force-placed flood insurance before November 2012.

IV.     **CONCLUSION**

It is hereby **ORDERED** that Chase's Motion to Dismiss [ECF No. 37] is **GRANTED** and the Amended Complaint [ECF No. 32] **DISMISSED WITHOUT PREJUDICE**.

If Plaintiff and his counsel conclude they have additional grounds upon which to base a Third Amended Complaint without running afoul of Rule 11, then a Third Amended Complaint must be filed within 10 calendar days of this Order.

**DONE and ORDERED** in Chambers, in Miami, Florida, December 21, 2015.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All Counsel of Record

24