**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 14-cv-24254-JG**

**MARCO J. HERNANDEZ,**

      **Plaintiff,**

**vs.**

**J.P. MORGAN CHASE BANK N.A.,**
**A Delaware Corporation,**

      **Defendants.**

                                     /

<u>**RESPONSE IN OPPOSITION TO DEFENDANT J.P. MORGAN CHASE BANK, N.A.'S**</u>
<u>**MOTION TO DISMISS THIRD AMENDED COMPLAINT**</u>

1

Plaintiff Marco Hernandez, by and through undersigned counsel, hereby serves his opposition to Defendant J.P. Mortgage Chase's motion to dismiss the Third Amended Complaint (D.E. 93).  Chase asks this Court to conclude that the investigation that Chase *claims* it conducted in response to Plaintiff's Notice of Error (D.E. 32-2) was reasonable as a matter of law, and to dismiss Plaintiff's RESPA claim with prejudice based on that conclusion. But it is not even disputed that the errors that Plaintiff asserted actually did occur, and Chase failed to correct them. Furthermore, the operative Third Amended Complaint *expressly denies* that Chase even did as it says. Accordingly, Chase's argument boils down to an impermissible appeal to the Court to make factual findings that contradict the allegations in the four corners of the operative compliant.  Furthermore, as Plaintiff explains below, there is ample evidence contracting Chase's assertion it conducted the investigation that it claims, or that if it did, it did so in a slipshod and deficient manner.  Accordingly, the issue cannot be appropriately decided in the context of the present motion to dismiss, and would not even be appropriately considered in the summary judgment context.

Furthermore, even if Chase did as it claims, it did not do enough.  Essentially, Chase determined that "no error occurred" because Plaintiff did not append documentation to his Notice of Error showing that his condominium association maintained continuance insurance coverage for the entire period between the years 2000 through 2011.   But under 12 C.F.R. §1024.35(e)(2)(ii) and the related administrative commentary, this simply is not an adequate basis for a mortgage servicer to determine that there was no error.

Additionally, although he was not required to do so, the fact remains that Plaintiff *did* provide evidence of continuous cover during a critical seven-month period in 2010.  It was during that time period that more than 85% of the charges that caused the asserted default and

wrongful foreclosure were assessed to his account. However, Chase overlooked that information and failed to remove $18,023.70 associated with premiums for force-placed flood insurance inexplicably charged to Plaintiff's account in three separate transactions between May and December 2010.  This provides compelling evidence that Chase failed to reasonably investigate the specific charges that caused the wrongful foreclosure, or even to closely examine the documents that Plaintiff incorporated into his Notice of Error.

Essentially, Chase claims that it investigated the concerns raised in Plaintiff's Notice of Error by reviewing records maintained by both Chase and its outsourced insurance tracking vendor Assurant. But Chase also claims that it found no evidence of continuous flood insurance during the year 2000 through 2011.  Plaintiff maintains that he provided such evidence every time Chase asked, and that he had no reason to believe that Chase expected him to automatically provide that evidence in the absence of a specific request.  (Third Amended Complaint, D.E.84 ¶¶. 20-26, p.11 n.3, D.E. 81-2¶¶. 5-10).   Thus, Plaintiff is entitled to the benefit of the reasonable inference that, if Chase really had checked the appropriate records in response to his Notice of Error, it would have found evidence demonstrating that Chase flood insurance was inappropriately placed on his account several times during the relevant period.  This inference is reinforced by a Chase document from March 2010, acknowledging that he was entitled to a number of refunds from prior force-placed insurance transaction because he provided proof of voluntary coverage. That document is discussed in greater detail below and is attached hereto as Exhibit "B."

Moreover, the operative complaint contains detailed allegations demonstrating that Chase's purported reliance on the records that it and Assurant maintained would have been unreasonable because there was simply no reason for Chase to expect to find evidence of

continuous coverage. (Third Amended Complaint D.E. 84, ¶¶. 19-26, 45).  Similarly, Chase acknowledged in its response to the Notice of Error that it had inappropriately procured force-placed insurance during the March 2nd 2010 to March 2nd 2011period described in the declarations page of the Hartford declarations page. (D.E. 32-2, p.1). Similarly, Plaintiff incorporated evidence into his Notice of Error showing that it also did so in 2013. D.E. 32-1, p.5).  Similarly, discussed in greater detail below, Plaintiff attaches as Exhibit "B" hereto correspondence that Chase sent on March 18th, 2010 acknowledging that Plaintiff had previously provided proof of voluntary coverage and was therefore entitled to refunds going back to December 2nd, 2008.  This information was more than sufficient to call into question the other force-placed insurance transactions on Plaintiff's account, particularly those in 2010.

As the Court recently noted in its recent order dismissing Plaintiff's Second Amended Complaint without prejudice, the regulatory regime that governs Plaintiff's RESPA claim only recently went into effect on January 10th, 2014.  (D.E. 77, p.9).   Thus, there is almost no relevant RESPA precedent concerning the issue of what constitutes a reasonable investigation under RESPA.  Like RESPA, the Fair Credit Reporting Act (FCRA) is another federal consumer protection statute.  *See Ali v. Vikar Management Ltd.,* 994 F.Supp 492, 496 (S.D. N.Y. 1998)(Discussing the Fair Credit Reporting Act) and *Medrano v. Flagstar Bank FSB*, 704 F.3d 661, 665-666 (9th Cir. 2012)(Discussing RESPA).  The FCRA contains a similar requirement requiring credit bureaus to conduct a reasonable investigation whenever a consumer disputes information in that consumer's credit file. There is considerably more precedent arising under the FCRA.   Plaintiff respectfully submits that it provides useful guidance for establishing the contours of a reasonable investigation under RESPA.

In *Cushman v. Trans Union Corp*. 115 F.3d 220, 225-226 (3d Cir. 1997), the Third Circuit held that a consumer reporting agency could be required to look beyond the source of the original investigation when conducing the "reasonable reinvestigation" required by 15 U.S.C. § 1681i(a) maybe required to investigate the accuracy of information it obtained from an entity that provided the bureau with information about the consumer's credit history.  The Seventh Circuit reached a similar conclusion in *Henson v. CSC Credit Services*,  29 F.3d 280, 287 (7th Cir. 1994). Both cases hold that the credit bureau's duty arises if the consumer provides information in its dispute indicating that the original source of the information may be unreliable.  In that situation, the cost of verifying that information must be balanced against the potential harm to the consumer. These cases also hold that the required balancing of the interests was for the jury to decide at trial.

In the case at bar, Plaintiff provided Chase with ample evidence that all of its decisions to place force-placed insurance on his account were erroneous each and every time.  Particularly given the evidence showing that the policy in force between March 2nd, 2011 through March 2nd, 2012 was a renewal of a prior annual policy, this evidence overwhelmingly demonstrates that the series of transactions beginning in May of 2010 constituted errors.  Under these circumstances, a reasonable fact finder could readily conclude that Chase's failure to look behind its original determinations was entirely unreasonable under these circumstances.

Chase also contends that Plaintiff has failed to allege that he was damaged by the RESPA violation.  But that argument attempts to re-write paragraph 51 of the Third Amended Complaint (D.E. 84) , where Plaintiff alleges that his damages include the improper force-placed flood insurance charges that were still on the account when this lawsuit was filed, costs associated with seeking and ultimately obtaining Chase's successor servicer's compliance with the

RESPA/Regulation X error resolution procedures, and the costs of defending himself from the foreclosure that ultimately terminated once Chase's successor servicers ultimately corrected the error. Plaintiff also alleges that he emotional distress and credit damage flowing from the prolonged foreclosure. It is entirely reasonable to infer that these damages occurred, or were exacerbated, by Chase's unreasonable failure to correct its errors.  Once Chase's successor finally did correct that error, Plaintiff did not sustain any further damage.

Chase does not raise a substantive challenge to Plaintiff's state law tort claims pled in Counts II and III  but instead insists that these claims are barred the *Clements v. JP. Morgan Chase Bank* class action settlement.  In making this argument, Chase attempts to gloss over the plain language of the class action settlement agreement in *Clements* that expressly provides that borrowers, such as Plaintiff, who have had all force-placed flood insurance charges credited and removed from their account are expressly carved out of the settlement class.  This carve-out provision is only logical. Recent amendments to the Real Estate Settlement Procedures Act require mortgage servicers to provide full refunds whenever force-placed insurance was placed while voluntary coverage was in effect.  The *Clements* settlement was intended to address an entirely different situation.  In that case, the class members were unlawfully injured even though the force-placed insurance was placed on their mortgage accounts due to class member borrowers' own failure to maintain adequate voluntary coverage. The *Clements* borrowers were nevertheless entitled to recover damages because the force-placed insurance premium was unreasonably inflated. Accordingly, the *Clements* class members received refunds equal to only a small percentage of the inflated insurance premium. But Plaintiff and those other borrowers who fall into the carve-out were automatically entitled to a full refund of the entire force-placed insurance premium.  Thus, the *Clements* settlement could not have offered Plaintiff any actual

6

relief, and it therefore cannot be construed as operating to deprive him of his legal rights.  The express carve-out for borrowers whose force-placed insurance was flat cancelled reflects that neither the settling parties, nor the *Clements* Court, had any intention to foreclose the claims that Plaintiff brings in this case.

Chase's motion to dismiss also contains liberal amounts of misleading rhetoric concerning the fact that the operative pleading in this case is the Third Amended Complaint. However, with the exception of the most recent, the two prior amendments related to claims against former co-defendants M and T Bank and Bayview Loan Servicing.  Those amendments were part of a process of disclosure and discussion that has resolved the issues between those parties, and they have since been dismissed from this lawsuit.  Those amendments therefore have nothing to do with the sufficiency of any claims against Chase.  Its rhetoric concerning the number of amendments is both misplaced and misleading.

Lastly, Chase asserts that Plaintiff's inclusion of the new tort claims in the Third Amended Complaint was somehow improper because the amendment deadline had passed. However, these claims were added after the Court dismissed the prior version of the complaint (D.E. 77).  The dismissal order did not limit amendment in anyway.  Moreover, the Court held a scheduling conference after the amendment (but prior to date Chase filed its motion) where it extended all applicable pretrial deadlines. Accordingly, Chase cannot reasonably argue that the amendment caused it any prejudice.  Furthermore, Chase's inapposite but predictable argument based upon *Clements* demonstrates precisely why Plaintiff could not have raised the current tort claims any earlier.  Until he confirmed through discovery that all force-placed flood charges had been removed from his account, Plaintiff would have faced the inevitable argument that he was a member of the *Clement* class and his claims were therefore precluded.

If the undersigned misinterpreted the Court's order at D.E. 77 as allowing amendment that included additional claims, then he would apologize. Nevertheless, Plaintiff would further submit that good cause exists for allowing even a belated amendment regarding the newly pled tort claims because they could not have been brought before Plaintiff acquired evidence showing that the charges covered by the *Clements* settlement had been removed from his account in their entirety.

## I.  FACTUAL BACKGROUND

As Plaintiff testified in his deposition, he had no difficulty paying his mortgage until late 2010. (D.E 75-1, p.5 line 18-19). At that point, his payments increased dramatically. *Id.* at p. 6 line 7-9.  As he explains in his Notice of Error, in 2011 he received a "reinstatement quote" indicating that there was now a total amount of $21,069.92 due on his loan, and that this amount included five missed mortgage payments of $2957.48.  However, the principal and interest portion of his monthly payment was only $678.53.(D.E. 32-1, p.2).  In the operative complaint, Plaintiff alleges that when a mortgage servicer charges force-placed insurance to a borrower's account, its computer systems will recalculate the monthly payment the servicer demand form the borrower in order to recover the costs of the force-placed insurance through the monthly payments. (Third Amended Complaint D.E. 84,¶.30).  Plaintiff further alleges that the dramatic increase in his monthly payments that resulted in the asserted delinquency and foreclosure was caused by the disputed force-placed insurance charges. *Id.* at ¶.31.

Through his September 10th, 2014 Notice of Error, Plaintiff invoked the recently amended error resolution procedures established by RESPA and Regulation X. (D.E. 32-1). In that Notice of Error, Plaintiff explains to Chase that charges for the force-placed flood insurance have caused, or at the very least dramatically exaggerated, the asserted delinquency that led the

filing of a foreclosure lawsuit against Plaintiff. *Id.* at p.2. Plaintiff incorporated into his Notice of Error a declarations page from the Hartford Insurance Company of the Midwest demonstrating Plaintiff's condominium association had flood insurance in place from March 2nd, 2011 to March 2nd 2012. (D.E. 32-1, p.7). Importantly, in the upper left hand corner of that document, that document indicates that the "type" of policy is a "renewal." Thus, this document plainly reflects that an identical policy was force from March 2nd, 2010 to March 2nd, 2011. Like most insurance policies, the Harford declarations page demonstrates that it was effective for a one-year period.

Chase responded to Plaintiff's notice by letter dated October 22nd, 2014, explaining that it determined that "no error occurred" because it had "…not received all required proof of hazard and flood insurance coverage between the timeframe of November 29th, 2000 and March 2nd, 2011." (D.E. 32-2, p.1). Chase did however acknowledge that the coverage provided by the declaration page attached to Plaintiff's Notice of Error was sufficient, and that a refund for the force-placed insurance charged during that policy period was due. *Id.*

However, discovery in this case demonstrates that Chase's response was factually inaccurate. Chase's response also mischaracterized the problem.

First, Notwithstanding Chase's reference to "hazard insurance" in its response to the Notice of Error, Chase's corporate representative testified that there was never any hazard insurance charged on the account. (Corp. Rep. Deposition of Chase by witness Peter Katsikas p. 16 lines 12-20; p.16, p. 17  line 2 -6). A true and correct copy of this transcript is attached hereto as Exhibit "A."

Second, Chase's assertion that its records did not reflect proof of voluntary coverage and that "[l]ender placed policies were charged to the loan" every year between 2000 and 2011 is

also not true.  As mentioned above on March 18th, 2010, Chase sent Plaintiff the letter attached as Exhibit "B" in which it advised that it would be removing all charges associated with force-placed flood insurance that had been applied since December 2nd, 2008 apparently through the date of the letter. Chase's letter explains that "[t]he reason for this cancellation is: You provided evidence of other insurance coverage." Accordingly, contrary to Chase's statements in response to the Notice of Error, *Chase clearly did have evidence that Plaintiff's condominium association's voluntary flood insurance coverage during several years between 2000 and 2011*. At a minimum therefore, Plaintiff is entitled to the reasonable inference that Chase's failure to consider that proof when it purportedly reviewed its records in response to his Notice of Error demonstrates that that either Chase really did not review the records, or its review was inadequate. Furthermore, the "Escrow Transaction History" document that Chase produced in discovery and that is attached hereto as Exhibit "C" corroborates the representation in Chase's March 18th, 2010 letter by showing several different transactions where flood insurance charges were reversed.

Third, Chase's response to the Notice of Error certainly implies that the dramatic increase in his monthly mortgage payments that pushed Plaintiff into foreclosure is attributable to force-placed insurance transactions occurring over an 11 year time span. However, a careful review of Chase's "Escrow Transaction History" belies that assertion.

As the "Escrow Transaction History" attached as Exhibit "C" reflects, during the seven months between May 11th, 2010 and December 10th, 2010, Chase inexplicably charged Plaintiff's mortgage loan account a total of $18,023.70 for three different force-placed insurance transactions. Furthermore, in the Chase cancellation letter attached as Exhibit "B", Chase acknowledges a number of erroneous force-placed insurance transactions.  Chase

acknowledgment was made less than two months before the next round of charges began. Importantly, according to the August 12th, 2011 "reinstate quote" incorporated into Plaintiff's Notice of Error, (D.E. 32-1, p.10),  as of August 12th, 2011 Plaintiff's mortgage loan was delinquent in the amount of $21,069.92.  Thus, the $18,023.70 in disputed flood insurance charges from 2010 represents more than 85% of the asserted delinquency.[1]  Accordingly, Chase's reference in response to the Notice of Error referring to force-placed insurance transactions occurring every year since 2010 was both inaccurate and misleading. The vast majority of those charges actually occurred during a seven-month period in 2010.  By the same token, if Chase had simply noticed that the Hartford declarations page attached to Plaintiff's Notice of Error was a renewal of the policy that was in force during the March 2nd, 2010 to March 2rd 2011, it could not have reasonably failed to remove the $18023.70 in force-placed insurance charges that occurred in 2010.  That single correction would have solved most of the problem that caused the asserted default leading to the wrongful foreclosure.

## II.  BECAUSE PLAINTIFF ALLEGES THAT CHASE DID NOT EVEN CONDUCT THE INVESTIGATION THAT IT DESCRIBES IN ITS RESPONSE TO THE NOTICE OF ERROR, CHASE'S MOTION TO DISMISS MUST BE DENIED

When considering a motion to dismiss, the Court must accept the allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor.  *See E.g. Jackson v. Bellsouth Telecomms.,* 372 F.3d 1250, 1262 (11th Cir.2004). As discussed in the Third Amended Complaint, Chase has claimed that it reviewed its own records and those maintained by its outsourced insurance tracking services vendor American Security Insurance Company/Assurant to determine whether Plaintiff had ever previously provided proof of insurance. (D.E. 84 ¶. 41).

---

[1] The force-placed flood insurance charges applied in the year 2010 equal an amount that would represent more than twenty-six monthly principal interest in the scheduled amount of $678.53.

Plaintiff contradicts that assertion in the operative Third Amended Complaint and expressly alleges that it did not even do that much. *Id.* at ¶.46, p.11 n. 3.  Although these allegations are entitled to a presumption of truth, Plaintiff has gone further.  He submitted a sworn affidavit in opposition to Chase's since withdrawn summary judgment motion where he explains that he provided evidence of the condominium associations' flood insurance coverage whenever he received correspondence from Chase asking him to do so.  (D.E. 81-2¶¶. 5-10). Accordingly, in the context of Chase's motion to dismiss, Plaintiff is entitled to the reasonable inference that if Chase had indeed checked the appropriate records, it would have discovered the Plaintiff had provided proof of the condominium's flood insurance each and every time Chase requested, and Chase never had any valid basis to force-place insurance. Plaintiff's position is buttressed by the Chase cancellation letter attached hereto as Exhibit "B" where Chase itself acknowledges that Plaintiff provided proof of coverage for the period beginning on December 2nd, 2008 through the March 18th 2010 long before he sent his Notice of Error.  Plaintiff's express denial that Chase conducted the investigation it claims, particularly when accompanies by this highly probative supporting evidence, is enough to preclude the Court from concluding in the context of a motion to dismiss that Chase actually conducted the investigation that it claims, and that investigation was therefore irrefutably reasonable.

### III. CHASE'S FAILURE TO THOROUGHLY REVIEW THE INFORMATION IN THE NOTICE OF ERROR AND ATTACHED RENEWAL DECLARATIONS PAGE IS SUFFICIENT IN AND OF ITSELF TO SHOW THAT CHASE'S HANDLING OF THE NOTICE OF ERROR WAS NOT REASONABLE

As discussed above, the Harford declarations page incorporated into Plaintiff's Notice of Error for the March 2nd 2011 to March 2nd 2012 policy period plainly indicates in the upper left hand corner that it is a "renewal" of a prior annual policy running from March 2nd, 2010 to March 2nd 2011.  (D.E. 32-1, p.7).  At the same time, Plaintiff notified Chase that force-placed

insurance errors had wrongfully pushed him into foreclosure.  More than 85% of the asserted $21,069.92 delinquency that caused the foreclosure was directly attributable to force-placed insurance charges occurring during the 2010 policy period.  But Chase blithely concluded that "no error occurred" and suggested that Plaintiff must obtain evidence of the condominium associations' flood insurance for an eleven year period of time that began fourteen years earlier before any corrections would be made.

Plaintiff submits that, at the very minimum, Chase should have recognized that the bulk of the force-placed flood insurance charges that gave rise to the Notice of Error occurred during a seven-month period in 2010, and that the fact that the 2011 Hartford declarations page was a renewal of a prior annual flood insurance policy demonstrated that all of these transactions were in error.  Accordingly, Chase should have recognized that urgent corrective action was necessary in order to avoid further harm to Plaintiff as a result of the pending foreclosure.

Plaintiff acknowledges that the Third Amended Complaint does not refer to the fact that the 2011 Hartford declarations was a renewal.  The importance of this issue was not apparent to Plaintiff until very recently, and only after undersigned counsel reviewed the information contained in the Escrow Transaction History attached hereto as Exhibit "C." Plaintiff was only able to meaningfully review the transaction history after he took the corporate representative deposition transcribed in Exhibit "A" hereto and obtained an explanation concerning the terminology that Chase used to describe the transactions in that document.

But Plaintiff does explain in the Third Amended Complaint that the fact that he repeatedly provided evidence of flood insurance supports the inference that, if Chase had done the investigation it claims, it would have discovered that evidence and realized that there were a series of mistaken force-placed insurance transaction on his account. (D.E 84 ¶. 46 p.11 n.3).

13

Plaintiff should not be required to identify every single reason why Chase's investigation was insufficient in the complaint. "Rule 8's pleading standard 'does not require 'detailed factual allegations….'" *Chaparro v. Carnival Cruise Corp.,* 693 F.3d 1333, (11th Cir. 2012) *Citing Ashcroft v. Iqbal,* 556 U.S. 662 678, 129 S.Ct. at 1949 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)).

Conversely, Chase would not have had to go to the same lengths as Plaintiff in order to put the facts in the proper context.  Chase should have been familiar enough with its own records to understand that the bulk of the transactions occurred in 2010, and that the documents attached to Plaintiff's Notice of Error (particularly the 2011 Harford renewal declarations), as well as the Chase cancellation letter attached hereto as Exhibit "B" made it highly likely that the $$18,023.70 in premium assessed over a seven-month time period was an error. Notably, the Escrow Transaction History attached as Exhibit "C" demonstrates that the flood insurance charges in the previous years was far less.

Instead, Chase insisted that "no error occurred" but did not appear to be aware of the prior cancellations discussed in the letter attached hereto as Exhibit "B."  Chase also made a misleading reference to lack of evidence of "hazard" insurance in addition to flood insurance, and framed the problem as series of transactions over an eleven-year period, despite the fact that the vast majority of the transactions occurred during a seven-month period in 2010.  Certainly drawing all reasonable inferences in Plaintiff's favor, it is entirely reasonable to conclude that Chase's handling of Plaintiff's Notice of Error was not reasonable.

## IV.  UNDER 12 C.F.R. 1024.35(e)(2)(ii) CHASE WAS NOT FREE TO DETERMINE THAT NO ERROR OCCURRED SIMPLY BECAUSE PLAINTIFF DID NOT DOCUMENT EVERY SINGLE RENEWAL OF THE CONDOMINUM'S INSURANCE POLICY

As the 11th Circuit has explained, the Department of Housing and Urban Development

had been granted congressional authority to promulgate implementing regulations under RESPA,

and those regulations were entitled to deference. *Patton v. Triad Guarantee Ins. Corp.,* 277 F.3d

1294, 1299  (11th Cir. 2002). *Citing Chevron v. Natural Resources Defense Council,* 467 U.S.

837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).  The 2010 Dodd/Frank Wall Street Reform

and Consumer Protection Act transferred authority over RESPA to the newly created Consumer

Financial Protection Bureau (hereafter "CFPB"). *See While v. PNC Financial Services Group

Inc.,* 2014 WL 4063344 *2 n.14 (E.D. PA. August 15th ,2014)(Case No. 11-7928). Thus, the

CFPB's interpretations of RESPA are also entitled to deference.    Pursuant to this grant of

Congressional authority the CFPB has promulgated Regulation X, and also issued official

interpretations and commentary.   12 C.F.R. 1024.35(3)(2)(ii) provides in pertinent part:

> *Requesting information from borrower.* A servicer may request
> supporting documentation from a borrower in connection with the
> investigation of an asserted error, but may not:
>
> (i) Require a borrower to provide such information as a condition
> of investigating an asserted error; or
>
> (ii) Determine that no error occurred because the borrower failed to
> provide any requested information without conducting a
> reasonable investigation pursuant to paragraph (e)(1)(i)(B) of this
> section.
>
> *Id.*

In its published commentary,  the CFPB explains its reasons for adopting this language

stating:

> … the Bureau believes the proposed rule strikes the right balance
> by permitting servicers to request documents from borrowers *so
> long as the servicer's investigation and conclusion that no error
> occurred is not dependent on the receipt of documents*.  As stated
> in the proposal, the Bureau believes that the process for servicers
> to obtain information from borrowers should not prejudice the
> ability of the borrower to seek the resolution of the error.
>
> "Final Rule On January 17th 2013, Full Document As Issued", p. 186-187

available at http://www.consumerfinance.gov/regulations/2013-real-estate-settlement-procedures-act-regulation-x-and-truth-in-lending-act-regulation-z-mortgage-servicing-final-rules/ (Last visited on March 6th, 2016)(Emphasis added).

Here, Chase's conclusion that no error occurred was based entirely on the fact that Plaintiff did not provide evidence of each and every single renewal of his condominium association's voluntary coverage.  The CFPB commentary above demonstrates that this is simply not an adequate basis for such a conclusion.  Chase was not free to base its conclusion that there had been no error on the lack of documents from Plaintiff.  By doing so, Chase violated Regulation X.  At the very minimum therefore, this violation should prevent Chase from prevailing on its motion to dismiss.

### V.  THE INFORMATION IN PLAINTIFF'S NOTICE OF ERROR, AND IN CHASE'S OWN RECORDS, WERE SUFFICIENT TO PLACE  CHASE ON NOTICE THAT IT WAS NO LONGER REASONABLE TO RELY UPON ITS INITIAL DETERMINATION THAT PLAINTIFF'S VOLUNTARY COVERAGE HAD LAPSED

As the Court recently noted in its recent order dismissing Plaintiff's Second Amended Complaint without prejudice, the regulatory regime that governs Plaintiff's RESPA claim only recently went into effect on January 10th, 2014.  (D.E. 77, p.9).   Thus, there is almost no relevant RESPA precedent concerning the issue of what constitutes a reasonable investigation under RESPA.  But like RESPA, the Fair Credit Reporting Act (FCRA) is another federal consumer protection statute.  *See Ali v. Vikar Management Ltd.,* 994 F.Supp 492, 496 (S.D. N.Y. 1998)(Discussing the Fair Credit Reporting Act) and *Medrano v. Flagstar Bank FSB*, 704 F.3d 661, 665-666 (9th Cir. 2012)(Discussing RESPA).  The FCRA contains a similar requirement requiring credit bureaus to conduct a reasonable investigation whenever a consumer disputes information in that consumer's credit file. There is considerably more precedent arising under the

FCRA.   Plaintiff respectfully submits that it provides useful guidance for establishing the contours of a reasonable investigation under RESPA.

In *Cushman v. Trans Union Corp*. 115 F.3d 220, 225-226 (3d Cir. 1997), the Third Circuit held that a consumer reporting agency could be required to look beyond the source of information in a consumer's credit file when conducing the "reasonable reinvestigation" required by 15 U.S.C. § 1681i(a).   The Seventh Circuit reached a similar conclusion in *Henson v. CSC Credit Services*, 29 F.3d 280, 287 (7th Cir. 1994). Both cases hold that the credit bureau's duty to look beyond the source of its original investigation arises if the consumer provides information in its dispute indicating that the original source of the information may be unreliable. In that situation, the cost of verifying that information must be balanced against the potential harm to the consumer. These cases also hold that the required balancing of the interests was for the jury to decide at trial.

*Henson* involved a situation where the consumer alleged that derogatory information on the consumer's credit report related to credit cards that were obtained by fraud.  The defendant credit bureau declined to remove the disputed account because the credit grantors verified that the account was accurate. However, *Cushman* holds that the credit bureau defendant was not entitled to summary judgment under those facts because a reasonable jury could have concluded that the credit grantors' were unreliable in this situation because they may not have been aware of the fraud.  *Cushman*, 115 F.3d at 227.

Here, as discussed above, Plaintiff's Notice of Error was replete with information that would have placed Chase on notice that its initial determination that force-placed flood insurance was appropriate, especially in the year 2010, was not reasonable.  Therefore, under *Cushman* and

*Henson*, even if it was undisputed that Chase conducted the investigation that it claims (and it

isn't) the reasonableness of that investigation should be left to the fact finder.

## VI. *CLEMENTS* EXPRESSLY CARVES OUT BORROWERS WHOSE FORCE-PLACED INSURANCE CHARGES HAVE BEEN CANCELLED FROM THE DEFINITION OF THE SETTLEMENT CLASS AND PLAINTIFF'S CLAIMS IN THIS CASE DO NOT MEET THE *CLEMENTS* DEFINITION OF "RELEASED CLAIMS"

Chase goes on for pages about the *Clements* settlement and the principals of *res judicata,*

but none of that argument changes the fact that Plaintiff plainly is not a member of the *Clements*

class.  Notably, Chase even excerpts the definition of a *Clements* class member as "[a]ll persons

in the United States who were charged who were charged for JP Morgan for lender-placed flood

insurance (*unless such charge was flat cancelled/refunded in full*).(D.E. 93, p.13)(Emphasis

added).  Plaintiff alleges that he is not a member of the Clements class because he falls squarely

into this exception. (Third Amended Complaint, (D.E. 84 ¶.55).  Chase's entire argument that

this unambiguous exclusion doesn't apply to Plaintiff is based on the contention that the

settlement agreement uses the word "was" in the past tense, and it therefore should not be

construed to apply in situations where the flat cancellation was applied after the final judgment.

(D.E. 93, p.15-16).   This semantical argument is based on the flawed premise that  "[t]here is no

dispute that Plaintiff *is* a *Clements c*lass member." (D.E. 93, p.13)(emphasis added).  That

proposition however couldn't be more disputed.  As the unambiguous carve-out for cancelled

policies makes plain, Plaintiff is certainly *not* a class member at present. Thus, Chase essentially

asserts that because Plaintiff *was a class member in the past*, res judicata applies. Chase however

cites absolutely no authority for that expansive argument.

But more importantly, the entire purpose of the *Clements* settlement was to compensate

borrowers who were properly charged for force-placed insurance, but who were injured by Chase

and its co-conspirators inflation of that premium.  Like many class members involved in force-placed insurance class actions in this district, the *Clements* class members received refunds equal to a small portion of the force-placed insurance premium.  Here, pursuant to 12 U.S.C §2605(l), Plaintiff was entitled to a full refund of all of the force-placed flood insurance that Chase applied to his account.  Ultimately, he received exactly that. Accordingly, notwithstanding the *Clements* settlement, Plaintiff was entitled to broader relief that necessarily subsumes the relief that *Clements* offered.  Since *Clements* does not afford individuals in Plaintiff's position any relief, it would not be logical for it to terminate of their rights.   Indeed, it appears that the express carve out that applies to Plaintiff was intended to avoid the absurd result that Chase now advocates here.

Furthermore, unlike most force-placed insurance settlements in this district, *Clements* is not a "claims made" settlement. To the contrary, it requires automatic distribution to the class members and contains *cy pres* provision for any unclaimed funds.  (*Clements* Settlement Agreement, D.E. 94-1 ¶. 32, ¶.36).   Thus, Plaintiff did absolutely nothing to identify himself as a class member.  Furthermore, any payment the settlement administrator may have sent to Plaintiff did not affect Chase's exposure to the *Clements* class in the slightest. That money would not have reverted to Chase in any event.

The *Clements* settlement's definition of "released claim" is also fatal to Chase's *res judicata* argument. The operative language defines a "released claim" as "all claims actually made or that could have been made on behalf of Settlement Class Members *based on the facts asserted in the Consolidated Amended Complaint…*" (D.E. 94-1, p.7)(Emphasis added). As discussed above, "Settlement Class Members" are defined as Chase borrowers who were charged for force-placed insurance, and whose charges were not flat cancelled.  In order words, *Clements*

releases claims for borrowers who were injured by inflated premiums for force-placed insurance, but who failed to maintain voluntary coverage.   Plaintiff's claims here are based on force-placed insurance that was wholly duplicative of Plaintiff's voluntary coverage.   There is absolutely no indication that the *Clements* class representatives had standing to assert the duplicative placement claims that Plaintiff brings here.  If the Court were to accept Chase's expansive interpretation, that could potentially call the *Clements*' representative's adequacy into question thereby raising due process concerns that could subject the entire *Clements* settlement to collateral attack.

In short, Chase asks this Court to ignore the plain language of the express language of the *Clements* carve-out and its definition of "released claim" in order to hand Chase a windfall.  But Plaintiff is no longer even arguably a member of the *Clements* and the claims he brings in this case were not, and could not have been, litigated in *Clements.*  Chase's efforts to invoke *res judicata* here attempt to force a square peg into a round hole.

## V. CHASE'S ARGUMENTS CONCERNING A LACK OF DAMAGES AND THE UNTIMELINESS OF THE THIRD AMENDED COMPLAINT ARE UNFOUNDED

Chase argues that that Plaintiff has failed to allege that he sustained any damages as a result of the RESPA violation.  But that argument simply ignores the plain language of Paragraph 51 of the Third Amended Complaint. (D.E. 84).  These allegations articulate damages that are the direct and natural consequence of Chase's failure to correct the error leading to the foreclosure.  In the factually similar case of *Burdick v. Bank of America*, 99 F.Supp.3d 1372, 1380 (S.D. Fla. 2015).   This Court found similar allegations to be sufficient.   Here, after Chase failed to correct the error, Plaintiff incurred expenses in sending a second Notice of Error to Chase's successor.  Decisions from this district consistently recognize that the associated

expense, while likely relatively small, is sufficient to satisfy the damages element of a RESPA

claim. See Miranda v. Ocwen Loan Servicing LLC., ---- F.Supp.3d--- 2015 WL 7767209 *4

(S.D. Fla. December 1st, 2015)(Docket Number 15–61434–CIV–COHN/SELTZER) citing

*Rodriguez v. Seterus, Inc.,* No. 15–61253–CIV, 2015 WL 5677182, at *2–3 (S.D.Fla. Sept. 28,

2015); *Russell v. Nationstar Mortg., LLC,* No. 4–61977–CIV, 2015 WL 541893, at *2 (S.D.Fla.

Feb. 10, 2015).

      Lastly, Chase asserts that the Court's order of dismissal and permitting amendment (D.E.

77). should be read as precluding Plaintiff from asserting the claims in Counts II and III because

they were not asserted in the prior iteration of the complaint. However, that order contains no

such restriction. Furthermore, after Plaintiff filed the operative Third Amended Complaint, the

Court conducted a status conference and entered a revised scheduling order. (D.E. 91). If Chase

believed that the amendment caused it any prejudice, it had the opportunity to raise any such

concern at the scheduling conference, but it did not.

      Moreover, as Chase's argument relating the *Clements* settlement underscores, Plaintiff

did have good cause for not raising the claims in Counts II and III earlier. Until he confirmed

that Chase's successor servicers had finally removed the force-placed insurance charges, he was

a member of the *Clements* class. By the time that he uncovered that evidence, Chase's motion to

dismiss the prior complaint was ripe for decision.

## **CONCLUSION**

      For the reasons described above, Plaintiff Marco Hernandez respectfully requests that the

Court deny Defendant J.P. Morgan Chase Bank N.A's Motion to Dismiss, and order Chase to

serve its Answer.

Respectfully Submitted,


THE LAW OFFICES OF JEFFREY N. GOLANT, P.A.

1999 N. University Drive, Ste. 213
Coral Springs, FL 33071
Phone:  (954) 942-5270
Fax:      (954) 942-5272
Email:    jgolant@jeffreygolantlaw.com
By: **/S/ JEFFREY N. GOLANT ESQ.**
Fla. Bar. No. 0707732
Counsel for Plaintiff Marco Hernandez


## CERTIFICATE OF SERVICE


I HEREBY CERTIFY that a true and correct copy of the foregoing Response in

Opposition to Defendant J.P. Morgan Chase Bank, N.A.'s Motion to Dismiss Third Amended

Complaint  was filed using CM/ECF and served upon  all counsel of record by Notice of

Electronic Filing generated by CM/ECF on March 7th, 2016


Susan Capote Esq.
Wargo & French, LLP
201 South Biscayne Boulevard
Suite 1000
Miami, FL 33131
305-777-6000
Fax: 305-777-6001
Email: scapote@wargofrench.com
Attorney for Defendant J.P. Morgan Chase N.A.


**/S/ Jeffrey Golant**


22