## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 14-24254-CIV-GOODMAN

### [CONSENT CASE]

MARCO J. HERNANDEZ,

      Plaintiff,

v.

J.P. MORGAN CHASE BANK N.A.,

      Defendant.

_____/

### ORDER ON DEFENDANT'S
### MOTION TO DISMISS THIRD AMENDED COMPLAINT

This dispute arises from two letters exchanged between a mortgagor and a mortgagee concerning the mortgagee's forced placement of flood/hazard insurance on the mortgagor's property, a condominium apartment. The mortgagee's compliance (or noncompliance) with the statutory scheme governing the error resolution process and communications between lenders and consumers is at the core of Plaintiff's claim.

Plaintiff originally filed this action against J.P. Morgan Chase Bank N.A. ("Chase")[1] for (1) violating the error resolution procedures established by the Real

_____

[1] Plaintiff's complaint [ECF No. 1], first amended complaint [ECF No. 13] and second amended complaint [ECF No. 32] also name Bayview Loan Servicing LLC ("Bayview") and Manufacturers and Traders Trust Company ("MT&T") as co-

Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e),[2] and for (2) negligence. [ECF No. 32]. However, the Undersigned dismissed those claims without prejudice and allowed Plaintiff "one final opportunity to state a claim" in a Third Amended Complaint. [ECF No. 77]. Plaintiff filed a Third Amended Complaint on January 3, 2016. [ECF No. 84].

In the Third Amended Complaint, Plaintiff re-alleged one claim from the previous complaints -- (1) the RESPA violation -- and *added* two new claims: (2) tortious interference with a business relationship and (3) violation of a fiduciary duty. [*Id.*]. Unlike the Second Amended Complaint [ECF No. 32], Plaintiff did not attach the relevant communications -- Plaintiff's September 10, 2014 "Qualified Written Request/Notice of Error/Request for Information" ("NOE") to Chase [ECF No. 32-1] and Chase's October 22, 2014 letter in response (the "Response") to Plaintiff [ECF No. 32-2] -- to the Third Amended Complaint [ECF No. 84]. For the reasons discussed below, this omission significantly affects Chase's motion to dismiss.

Chase moves to dismiss Plaintiff's Third Amended Complaint on three grounds: (1) Chase fully complied with its RESPA obligations; (2) Plaintiff failed to adequately plead that any alleged damages were **caused** by an alleged RESPA violation; and (3)

defendants. However, the claims against those two defendants were settled and dismissed. [ECF Nos. 67; 68].

[2]   This statutory requirement is supplemented by "Regulation X," 12 C.F.R. § 1024.35(e), which is discussed in more detail below.

Plaintiff's new claims are barred by a class action settlement in which Plaintiff was allegedly a class member. [ECF No. 93]. Plaintiff filed a response [ECF No. 97], Chase filed a reply [ECF No. 98], Plaintiff filed a notice of supplemental authority [ECF No. 99], Chase filed a response to the first notice of supplemental authority [ECF No. 100], and Plaintiff filed a subsequent notice of supplemental authority [ECF Nos. 105; 105-1] that was partially stricken [ECF No. 108]. The matter is now ripe for ruling.

For the reasons outlined below, the Undersigned **denies** Chase's motion.

## I.      FACTUAL BACKGROUND

Plaintiff owns a condominium in the City of Miami, Florida, which he purchased by obtaining a mortgage loan ("Mortgage"). [ECF No. 84, p. 2]. The mortgage loan was originated by International Bankers Financial Group. [*Id.*]. Chase serviced Plaintiff's Mortgage. [*Id.*, at p. 3].

Plaintiff alleges that, beginning in 2000, Chase began force-placing flood insurance on the property and applying related late charges to his loan account. [*Id.*, at p. 5]. Plaintiff further alleges, however, that none of these forced-placed insurance transactions were needed because the condominium association maintained adequate insurance coverage that was sufficient to satisfy Plaintiff's obligations under the Mortgage. [*Id.*].

Plaintiff claims that Chase improperly charged the cost of these force-placed insurance policies to Plaintiff's mortgage account beginning in 2011, which increased

the amount of money demanded for the monthly mortgage payments. [*Id.*, at p. 6]. Plaintiff further alleges that he continued to pay the scheduled monthly mortgage payments but refused to pay the additional amounts demanded for the forced-placed insurance policies. [*Id.*]. As a result of this default, Chase commenced foreclosure proceedings. [*Id.*].

On September 10, 2014, Plaintiff's counsel sent Chase the NOE, in which he outlined a number of alleged errors in the servicing of Plaintiff's mortgage loan and requested that Chase respond in writing to address these alleged errors. [*Id.*, at p. 8]. At this time, Plaintiff was aware that force-placed insurance was applied in the year 2011, and incorporated evidence of the condominium association's insurance coverage for that year into his Notice of Error. [*Id.*]. However, Plaintiff was not aware that Chase had imposed charges for force-placed insurance on his account every year since the year 2000 until he received Chase's response to the Notice of Error. [*Id.*]. Chase responded to this letter on October 21, 2014 and explained that it would only correct the unauthorized force-placed insurance for the year 2011, but stated that it had determined there was no error with respect to other years that insurance was force-placed in the property. [*Id.*, at p. 9].

Plaintiff alleges that Chase's response is statutorily insufficient [*id.*, at pp. 10-14] and that the imposition of the force-placed insurance constitutes tortious interference

with a business relationship [*id.*, at pp. 15-19] and violation of a fiduciary duty [*id.*, at pp. 19-21].

Chase responds that Plaintiff's allegations do not rise to the level of a RESPA violation because both the allegations of the Complaint and the exhibits [ECF Nos. 32-1; 32-2] attached to the **_Second_** Amended Complaint reflect that Chase complied with its RESPA obligations -- i.e., it conducted a reasonable investigation and provided the borrower with the required responsive information. [ECF No. 93, pp. 4-11]. Additionally, Chase responds that Plaintiff's new claims -- which substantively concern the efficacy of imposing force-placed insurance -- are barred by a class action settlement agreement in which Plaintiff was a class member who did not opt out and actually submitted a claim for recovery. [*Id.*, at pp. 11-19]. Concerning the class action matter, Chase submitted the settlement agreement [ECF No. 94-1], final judgment [ECF No. 94-2] and an affidavit from a settlement administrator [ECF No. 95-1] as exhibits.

## II.   LEGAL STANDARD FOR MOTION TO DISMISS

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must take all well-pleaded facts in the plaintiff's complaint and all reasonable inferences drawn from those facts as true. *Jackson v. Okaloosa Cnty., Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994). "A pleading must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). While detailed factual allegations are not always

necessary in order to prevent dismissal of a complaint, the allegations must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555. *See also Iqbal*, 556 U.S. at 678 (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)).

The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient **factual** matter, accepted as true, to 'state a claim to relief that is **plausible on its face**.'" *Iqbal*, 556 U.S. at 678. (quoting *Twombly*, 550 U.S. at 570) (emphasis added); *see also Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288–90 (11th Cir. 2010). "[C]onclusory allegations, unwarranted deductions of fact, or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Moreover, when the "well-pleaded facts do not permit the

6

court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* (internal quotations omitted).

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)).

While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly,* 550 U.S. at 555; *Iqbal,* 556 U.S. at 678. "Dismissal pursuant to Rule 12(b)(6) is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (quoting *Conley*, 355 U.S. at 45–46). Although, as noted, a court must accept as true a plaintiff's allegations, a court may dismiss a complaint on a dispositive issue of law. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### III.    LEGAL ANALYSIS

#### A.    Count I: Alleged Violation of RESPA

##### 1.    *RESPA Legal Standard*

RESPA was enacted, in part, to ensure "that consumers throughout the Nation are provided with greater and timelier information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a). It provides that borrowers may inquire about federally related mortgages by making a "qualified written request." 12 U.S.C. § 2605(e)(1)(A).

The term "qualified written request" is defined in 12 U.S.C. § 2605(e)(1)(B): it is a request that, *inter alia*, (a) describes why a borrower believes her "account is in error," or (b) "provides sufficient detail to the servicer regarding other information sought by the borrower." *Id.* The servicer is required to provide a written acknowledgment of the request within five days, and must respond within thirty days. *Id.* § 2605(e)(2). Additionally, Section 2605(e)(2) requires servicers -- "[n]ot later than 30 days . . . after the receipt from any borrower of any qualified written request" -- to:

> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

*Id.* § 2605(e)(2).

However, on January 10, 2014, a new regulatory regime went into effect through the Dodd–Frank Wall Street Reform and Consumer Protection Act of 2010. Pub. L. No. 111–203, 124 Stat. 1376 (July 21, 2010) ("Dodd–Frank Act"). Pursuant to the Dodd–Frank Act, new regulations were promulgated: the "Mortgage Servicing Rules under the Real Estate Settlement Procedures Act (Regulation X)," codified at 12 C.F.R. § 1024. Notably, the new regulation delineates separate procedures for responding to a borrower's Notice of Error and a borrower's Request for Information. With respect to a Notice of Error, the regulations impose the following obligations upon a servicer with respect to its response to a Notice of Error:

(e) Response to notice of error.

(1) Investigation and response requirements.

(i) In general[,] . . . a servicer must respond to a notice of error by either:

(A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; **or**

(B) Conducting a reasonable investigation **and** providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e) (emphasis added).

Therefore, if a servicer selects option (B), then it has two obligations:   (1) conducting a reasonable investigation, and (2) providing a written response containing certain types of information and disclosures.

### 2.   *Application to Plaintiff's Complaint*

As a threshold matter, the Undersigned must address the fact that Chase's motion to dismiss relies heavily on two exhibits attached to the earlier-filed Second Amended Complaint: Plaintiff's NOE [ECF No. 32-1] and Chase's Response [ECF No. 32-2]. No party contests the authenticity of any of these documents, and, generally, when considering a motion to dismiss, the court may consider exhibits attached to the pleadings**.** *See Grossman*, 225 F.3d at 1231. However, as a matter of law, "[a]n amended pleading **supersedes** the former pleading; 'the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.'" *Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006) (emphasis

added) (quoting *Proctor & Gamble Defense Corp. v. Bean*, 146 F.2d 598, 601 n. 7 (5th Cir. 1945)).

So when Plaintiff filed the Third Amended Complaint, the Second Amended Complaint (and its attached exhibits) "became a legal nullity." *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016). These exhibits were never refiled, either as part of the Third Amended Complaint or attached to Chase's motion to dismiss.

Therefore, despite Chase relying heavily on the exhibits to the Second Amended Complaint in its motion to dismiss (and this Court having previously relied on those same exhibits in the Order dismissing the Second Amended Complaint without prejudice [ECF No. 77]), the Court cannot now consider the exhibits in assessing whether Plaintiff's latest complaint fails to state a claim.

In concluding that Plaintiff's Second Amended Complaint did not state a claim upon which relief could be granted, the Undersigned viewed "Plaintiff's allegations in his Second Amended Complaint as a scenario where 'the exhibits contradict the general and conclusory allegations of the pleading[.]'" [ECF No. 77, p. 15] (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007)). Because of the procedural requirements outlined above, the Court cannot reach that same conclusion this time around, but, rather, I must accept the allegations in the complaint as true (and uncontradicted by any exhibit).

On the face of the Third Amended Complaint, the Undersigned concludes that Plaintiff sufficiently states a claim for a RESPA violation. Through his September 10, 2014 NOE [ECF No. 84, p. 8], Plaintiff invoked the error resolution procedures established by RESPA and Regulation X. According to Plaintiff's allegations, this NOE alerted Chase that it inappropriately assessed charges for force-placed insurance to Plaintiff's account, thereby causing a wrongful foreclosure. [*Id.*, at p. 11]. Thus, pursuant to RESPA and Regulation X, Chase had two options in its response: (1) correct the errors and provide written notification of the correction, or (2) conduct a reasonable investigation and provide a written response containing certain types of information and disclosures. 12 C.F.R. § 1024.35(e).

Plaintiff's complaint alleges that Chase chose the second option, insisting that no error occurred other than in connection with the 2011 force-placement. [ECF No. 84, p. 11]. Plaintiff first alleges that Chase conducted no investigation at all, despite claiming to in its response. Plaintiff maintains that he provided evidence of insurance to Chase on many occasions; "[h]owever, Chase claims that it found no evidence of insurance during the relevant years. This demonstrates that Chase did not conduct the claimed 'investigation.' If Chase really had checked the relevant records, Chase should have discovered the evidence that Plaintiff provided on several different occasions. Chase would have therefore discovered that there were additional years beyond 2011 when it force-placed insurance in violation of the mortgage." [*Id.*, at p. 11 n. 3].

Plaintiff next alleges that even if an investigation had been conducted, it must be deemed legally unreasonable because it "consisted of nothing more than reviewing the evidence of the condominium association's insurance coverage from 2011 that Plaintiff provided with his Notice of Error as well as purportedly reviewing its own records, and those maintained by ASIC/Assurant, solely to determine whether Plaintiff had ever previously provided evidence of each and every renewal of the condominium association's flood insurance." [*Id.*]. According to Plaintiff, this is insufficient under RESPA, which would require Chase to investigate whether the condominium association's flood insurance coverage ever lapsed, or whether it had reason to believe that it did. [*Id.*, at pp. 11-12].

Plaintiff further alleges that Chase's claimed investigation was legally insufficient because determination that no error occurred with respect to the force-placed insurance coverage in years other than 2011 was based entirely upon the fact that Plaintiff did not provide proof of coverage in those years in support of his Notice of Error. [*Id.*, at p. 12]. According to Plaintiff, Chase was not permitted to determine that no error occurred simply because the borrower did not provide documentation demonstrating that error. [*Id.*]. Plaintiff alleges that "[f]actually, it was . . . unreasonable for Chase to rely upon its own claimed review of its records and ASIC/Assurant's records because . . . Plaintiff was not required to automatically provide evidence of each

13

and every renewal and had no reason to believe that Chase expected him to do so."
[*Id.*].

Accepting these allegations as true, the Undersigned finds this to be sufficient to support a *plausible* claim under RESPA. The determination of whether a reasonably sufficient investigation occurred (or an investigation occurred at all) requires additional factual determinations. *See Renfroe v. Nationstar Mortg. LLC*, No. 15–10582, 2016 WL 2754461, *3-4, --- F.3d --- (11th. Cir. May 12, 2016) ("In reviewing Rule 12(b)(6) motions, courts are bound to accept the plaintiff's allegations as true and to construe them in the light most favorable to her. [The defendant] asks us to do the opposite. [The defendant] suggests we should accept its contrary allegations—that it conducted a reasonable investigation into [the plaintiff's] account and found no error—and then to grant its motion to dismiss on that basis. We decline to do that."). Accordingly, Chase's motion to dismiss Count 1 must be rejected.

### 3.   *Whether the alleged RESPA violation caused damages.*

Chase also alleges that the Third Amended Complaint fails to allege that the RESPA violation actually caused Plaintiff's damages. [ECF No. 93, pp. 10-11].

If a servicer fails to comply with RESPA, then the borrower may recover "any actual damages to the borrower as a result of the failure," as well as statutory damages "in the case of a pattern or practice of noncompliance." 12 U.S.C. § 2605(f)(1)(A)–(B). A plaintiff must show facts "establishing a causal link between the financing institution's

violations and [his] injuries." *McClean v. GMAC Mortg. Corp.*, 398 F. App'x 467, 471 (11th Cir. 2010).

In the Third Amended Complaint, Plaintiff alleges that "[h]is damages include[] unwarranted fees and charges applied to his account, legal fees associated with defending himself from the wrongful foreclosure, damage to his credit rating, emotional distress, and the costs of preparing and mailing the Notices of Error, including but not limited to the Notice of Error that he sent to Bayview after Chase failed to adequately respond." [ECF No. 84, p. 14].

Plaintiff, himself, notes that the fees and charges applied to his account were eventually removed. [*Id.*, at p. 14 n. 4]. Additionally, the default and foreclosure proceedings were already underway at the time that Plaintiff sent the NOE. [*Id.*, at pp. 6, 8]. However, as another trial court in a factually-similar matter noted, the defendant's "RESPA violation could plausibly have exacerbated the foreclosure proceedings and led Plaintiff to suffer additional harm that he would not have experienced absent the violation. Such a plausible allegation is all that is required to survive a motion to dismiss." *Burdick v. Bank of America, N.A.*, 99 F. Supp. 3d 1372, 1380 (S.D. Fla. 2015). The Undersigned agrees and adopts this reasoning.

Furthermore, Plaintiff also alleges that the alleged RESPA violation required the additional expense of sending a second notice of error to Chase's successor. Such an expense could also be recoverable in addition to the damages of an exacerbated

15

foreclosure process. *See Miranda v. Ocwen Loan Servicing, LLC*, --- F. Supp. 3d --- , No. 15–61434–CIV, 2015 WL 7767209, *4 (S.D. Fla. Dec. 2, 2015) ("alleged photocopying costs, postage costs, and reasonable attorney's fees incurred after an incomplete or insufficient response to a [notice of error] are actionable under RESPA.") (citing *Rodriguez v. Seterus, Inc.*, No. 15–61253–CIV, 2015 WL 5677182, at *2–3 (S.D. Fla. Sept. 28, 2015); *Russell v. Nationstar Mortg., LLC*, No. 4–61977–CIV, 2015 WL 541893, at *2 (S.D. Fla. Feb. 10, 2015).

Accordingly, the Undersigned finds that Plaintiff has sufficiently alleged that the alleged RESPA violation caused his damages.

### B.    Counts II and III: Tortious Interference and Violation of Fiduciary Duty

#### 1.    *Whether the class action settlement precludes these claims.*

Chase alleges that Plaintiff's second and third counts are barred by a settlement in a class action case involving the imposition of force-placed insurance. [ECF No. 93, pp. 11-16]. To support this claim, Chase submitted the settlement agreement [ECF No. 94-1], final judgment [ECF No. 94-2] and an affidavit from a settlement administrator [ECF No. 95-1] as exhibits.

As with the attachments to the earlier-filed but now superseded Second Amended Complaint, the Court cannot consider these extrinsic documents in addressing a motion to dismiss. "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its

consideration to the pleadings and exhibits attached thereto.'" *Grossman*, 225 F.3d at 1231 (quoting *GSW, Inc.*, 999 F.2d at 1510).

Chase asserts that the Court may consider these documents without converting the motion to dismiss into a summary judgment motion. Specifically, Chase cites to *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002), in which the Eleventh Circuit held that "a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to plaintiff's claim; and (2) undisputed." However, Chase twists the meaning of *Horsley* to invoke it here, because the documentation concerning the class action settlement is not central to plaintiff's claim, but rather, central to Chase's *defense*. This is an entirely different set of factual circumstances and so the Court must reject Chase's argument and not consider any documentation concerning the class action settlement that Chase alleges precludes the present action.

In order to determine whether Plaintiff is a member of a settlement class and whether that settlement precludes the present action, the Court must make legal and factual determinations based upon certain extrinsic documents. The law governing motions to dismiss does not allow the Court to consider such documents. Accordingly, the Undersigned rejects (at least for now) Chase's argument concerning these claims.

Chase, of course, is free to assert this argument in a summary judgment motion, which it has now filed. [ECF No. 106].[3]

### 2.   *Whether the previous dismissal precluded new claims.*

Finally, Chase claims that the Undersigned's previous dismissal order [ECF No. 77] precluded the addition of new causes of action. While the Undersigned certainly did not expressly provide that Plaintiff could include new causes of action in his Third Amended Complaint, the Undersigned finds that the dismissal order generally allows Plaintiff to file a new complaint and makes no such restrictions on the causes of action that are allowable. Moreover, Plaintiff could have filed a motion for leave to add new causes of action. Given that leave to amend is usually provided because the rule permitting amendments is generally flexible, Plaintiff's decision to simply add the new claims instead of expressly seeking advance approval is a procedural omission which did not unfairly prejudice Chase. Therefore, the Undersigned rejects this final argument for dismissal.

---

[3]     The summary judgment motion does, in fact, assert the prior settlement as a separate ground for entry of summary judgment.

IV.     **CONCLUSION**

The Court **denies** Chase's Motion to Dismiss [ECF No. 93].

**DONE and ORDERED** in Chambers, in Miami, Florida, May 16, 2016.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>Copies furnished to</u>:
All Counsel of Record